**BURSOR & FISHER, P.A.**
Joel D. Smith (State Bar No. 244902)
Brittany S. Scott (State Bar No. 327132)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: jsmith@bursor.com
          bscott@bursor.com

**TREEHOUSE LAW, LLP**
Benjamin Heikali (State Bar No. 307466)
2121 Avenue of the Stars, Suite 2580
Los Angeles, CA 90067
Telephone: (310) 751-5928
E-mail: bheikali@treehouselaw.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LORIANN STAPLES, ASHLEY CLARK, and DEANN SCOTT, individually and on behalf of all others similarly situated,<br><br>                                              Plaintiffs,<br>        v.<br><br>E&E CO., LTD.,<br><br>                                              Defendant. | Case No.<br><br><br>**CLASS ACTION COMPLAINT**<br><br><br>JURY TRIAL DEMANDED |

## NATURE OF THE ACTION

1.      This is a putative class action lawsuit on behalf of purchasers of Defendant E&E Co., Ltd.'s ("Defendant") 1000 thread count Beautyrest-brand bedding and linen products (the "Beautyrest Products") and 1500 thread count Madison Park-brand bedding and linen products (the "Madison Park Products") (collectively, the "Products").  Defendant is the licensee of the Beautyrest and Madison Park trademarks.  Defendant labels, markets, manufactures, distributes, and sells these Products as having higher thread counts than they actually have.  By doing so, Defendant's labeling and marketing have the tendency or capacity to deceive or confuse reasonable consumers into believing the Products are of better quality, more durable, longer lasting, softer, and more comfortable for sleeping than products with lesser thread counts.  In purchasing Defendant's Products, class members received less than what was promised by Defendant due to the inflated thread counts represented on the advertisements and labels of the Products.

2.      Independent testing has revealed that, contrary to Defendant's representation that its products are made with a thread count of 1000, the Beautyrest Products are actually made with a thread count of 216.[1]  Likewise, testing has revealed that the Madison Park Products are not 1500 thread count, but in fact in the range of 237 to 295.[2]  As a cross check against the test results, the same industry-standard test methodology was used on a competing brand advertised as 600 thread count.  Unlike Defendant's Products, the test results for that competing product passed.[3]

3.      Defendant's misleading representations of the Products deceive the public into believing that they are purchasing a product with a higher thread count than they actually have. The fact that Defendant emphasizes the thread count as a distinguishing feature of its products shows that thread count is material to consumers.

4.      Plaintiffs and Class Members would not have purchased the Products – or would not have paid as much as they did to purchase them – had they known that they were not in fact the

---

[1] *See* Exhibit A.

[2] *See* Exhibit B.

[3] *See* Exhibit C.

thread count represented.  Plaintiffs and Class Members thus suffered monetary damages as a result of Defendant's deceptive and false representations.

**PARTIES**

5.      Plaintiff Loriann Staples is domiciled in California, residing in Fremont, California. In, or around November 2021, Plaintiff Staples purchased a pack of Beautyrest 1000 thread count bed sheets from a Target in Fremont, California.  Before buying her Beautyrest Product, Plaintiff Staples reviewed the product's labeling and packaging and saw that the product was labeled and marketed as "1000 thread count."  Plaintiff Staples understood this statement to mean that the sheets she was purchasing would be 1000 thread count sheets, and she bought the sheets because of that representation.  Plaintiff Staples would not have purchased the sheets if she had known that the 1000 thread count labeling was false, or she would have paid less for them.

6.      Plaintiff Ashley Clark is domiciled in New York, residing in Manhattan.  In, or around December 2022, Plaintiff Clark purchased a pack of Beautyrest 1000 thread count bed sheets from a Target in New York.  Before buying her Beautyrest Product, Plaintiff Clark reviewed the product's labeling and packaging and saw that the product was labeled and marketed as "1000 thread count."  Plaintiff Clark understood this statement to mean that the sheets she was purchasing would be 1000 thread count sheets, and she bought the sheets because of that representation. Plaintiff Clark would not have purchased the sheets if she had known that the 1000 thread count labeling was false, or she would have paid less for them.

7.      Plaintiff Deann Scott is domiciled in California, residing in Oakley, California.  In, or around, Summer 2021, Plaintiff Scott purchased a pack of Madison Park 1500 thread count bed sheets from a Bed Bath & Beyond in Antioch, California.  Prior to her purchase of her Madison Park Product, Plaintiff Scott reviewed the product's labeling and packaging and saw that the product was labeled and marketed as "1500 thread count."  Plaintiff Scott relied on that labeling and packaging to choose her Madison Park Products over comparable products.  Plaintiff Scott saw these representations prior to, and at the time of purchase, and understood them as representations and warranties that her Madison Park Product would be of a "1500 thread count."  Plaintiff Scott understood this statement to mean that the sheets she was purchasing would be 1500 thread count

sheets, and she bought the sheets because of that representation.  Plaintiff Scott would not have purchased the sheets if she had known that the 1500 thread count labeling was false, or she would have paid less for them.

8.      Plaintiffs and putative class members paid a price premium due to the false and misleading thread count claims.

9.      Plaintiffs regularly go to stores where Beautyrest or Madison Park sheets are sold and would consider purchasing the products again in the future if the thread count labels were accurate and complied with industry standards for determining thread counts. Absent an injunction to this effect, Plaintiffs will be unable to rely with confidence on Defendant's advertising of the Products in the future. Indeed, if those change were made, Plaintiffs would have no practical way to know that was the case.  As a result, they may either refrain from purchasing the products in the future or may purchase them *incorrectly* assuming that they have been improved, and that the thread count labeling conforms with industry standards for accurately determining thread counts.

10.     Defendant is a corporation incorporated in the state of Delaware with its principal executive office located in Fremont, California.  Defendant is the licensee of the Beautyrest and Madison Park trademarks.  Defendant markets, manufactures, distributes, and sells the Beautyrest and Madison Park products.

11.     There is a significant contact or significant aggregation of contacts between Defendant and each class member.  A significant portion of the conduct giving rise to liability occurred in California.  On information and belief, Defendant's product compliance, quality assurance, supply chain, retail operations, marketing, global sourcing, and customer service departments are located at Defendant's headquarters in California.  Final decisions and approvals regarding labeling, marketing, sales, and pricing were made in California.  To the extent that the sheets and pillowcases were manufactured outside California, they were nonetheless made *for* Defendant as the exclusive, California-based importer and distributor of the products.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction pursuant to 28 U.S.C § 1332(d)(2)(a) because this case is a class action where the aggregate claims of all members of the proposed class

are in excess of $5,000,000.00, exclusive of interest and costs, there are over 100 members of the putative class, and Plaintiffs, as well as most members of the proposed class, are citizens of states different from Defendant.

13.     This Court has personal jurisdiction over Defendant because Defendant is headquartered in this District, and Plaintiffs' claims arise out of each of the Defendants' forum-related activities including the sale, marketing, and advertising of the Products.

14.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant is headquartered in this District and a substantial part of the events giving rise to Plaintiffs' claims took place within this District.

15.     Defendant received multiple pre-suit notices of the claims at issue in this litigation, including relevant test results, in January and April 2023.  Defendant has responded to the notices, but not provided any relief to class members or altered its unlawful business practices.

## FACTUAL ALLEGATIONS

**A.     Defendant's Misrepresentations and Omissions Regarding The Products**

16.     **Products at issue**: Beautyrest 1000 thread count sheets and pillowcases, and Madison Park 1500 thread count sheets and pillowcases.

17.     All Beautyrest sheets and pillowcases are substantially similar regardless of size or color.  The labeling is materially the same for all such products.  The 1000 thread count labeling is false for all such products, and for the same reason.

18.     All Madison Park sheets and pillowcases are substantially similar regardless of size or color.  The labeling is materially the same for all such products.  The 1500 thread count labeling is false for all such products, and for the same reason.

19.     **Relevant time period**: All misrepresentation and omissions at issue here were consistently made at all times during the last four years, at least.

20.     There have been no material changes to the product packaging during the relevant time period.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

21.    **Misrepresentation at issue**: The misrepresentations at issue are found on the front packaging of the Products.

22.    Defendant misrepresents the Beautyrest Products as having a thread count of 1000:



1    23.    Defendant misrepresents the Madison Park Products as having a thread count of

2    1500:



24.    The online labeling and marketing of the Products similarly reference the same

purported thread counts. For example, the Madison Park listings on Amazon.com,

Bedbedbathandbeyond.com, and Macys.com all boldly claim that the Products have a "1500

Thread Count." *See examples below.*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



Roll over image to zoom in



**Madison Park**  **Cotton Blend Sheet Set Grey Queen**

Visit the Madison Park Store

★★★★☆ ⌄    18 ratings

$**71**^67 ($17.92 / Count)

Get $50 off instantly: Pay $21.67 $71.67 upon approval for the Amazon Rewards Visa Card. No annual fee.

| | |
|---|---|
| **Size** | Queen |
| **Material** | Cotton Blend |
| **Color** | Grey |
| **Pattern** | Solid |
| **Brand** | Madison Park |

**About this item**

- 51% Cotton/49% Polyester
- 52% Cotton / 48% Polyester 1500 thread count
- 1 Flat Sheet:90"W x 102"L 1 Fitted Sheet:60"W x 80"L + 16"D 2 Standard Pillowcases:20"W x 30"L(2)
- Machine Wash

**Consider a similar item**



Mellanni Queen Sheet Set - Hotel Luxury 1800 Bedding Sheets & Pillowcases - Extra Soft Cooling Bed Sheets - Deep Pocket up to 16 inch Mattress - Wrinkle, Fade, Stain Resistant - 4 Piece (Queen, White)

★★★★☆ (333361)

$34.97 ✓prime

🌿 Climate Pledge Friendly



Madison Park 1500-Thread-Count 2-Piece Cotton Blend Pillowcase

★★★★☆ 150 Reviews ⌄   Write Review   Q&A

$20.99 - $26.99 Regular Price

Earn **210 points** on this product! ⓘ

Price Match Prom...

Earn 2x points

Limited Time Offer: Earn 2x Reward Points ⓘ

Get up to $50 in rewards! ⓘ



Color

Size

| STANDARD | KING |

| 🏬 FREE Store Pickup | 🚚 Same Day Delivery | 🚚 Ship to Home |
| Out of stock | Out of stock | Out of stock |

Out of stock at Clybourn Place
Out of stock within 50 miles of 60614



MADISON PARK

**1500 Thread Count Cotton Blend 4-Pc. Sheet Set , Queen**

★★★★☆ 4 (120)

$95.19 with code: CLEAR   ~~$125.00~~   Details

4 interest-free payments of $23.79 with Klarna. Learn More

Bonus Buy $10.99 Throw

COLOR: SEAFOAM



SIZE:  QUEEN

| Queen | King | California King | Standard Pillowcase |

| King Pillowcase |

| − | 1 | + |

**Add To Bag**



25.   Defendant intends that consumers will read and rely on the thread count claims made in Defendant's advertising and labeling, and Plaintiffs and putative class members read and rely on those claims to their detriment.

**B.   Why/How The Representations At Issue Here Are False And Have The Tendency Or Capacity To Deceive Or Confuse Reasonable Consumers**

26.   A fabric's "thread count" is a quantifiable measure of the total number of warp (vertical) and weft (horizontal) yarns within a square inch of the fabric. To calculate thread count, the number of vertical yarns is simply added to the number of horizontal yarns.

27.   A fabric's thread count is indicative of the quality, durability, and longevity of the fabric, and also determines the coarseness or fineness of the fabric, and therefore how soft and smooth it is to the touch. If a fabric has a higher thread count (i.e., more threads per square inch), it will not only be stronger and more durable, but will also feel smoother and softer to the touch. As such, a fabric's "thread count" has become a material basis on which reasonable consumers make purchasing decisions.

28.     Moreover, as a general matter, the higher the thread count, the higher the price for that product. Indeed, consumers pay a premium for sheets based on purportedly higher thread counts and the belief that a higher thread count means higher quality. *See* https://www.mattressadvisor.com/thread-count-really-matter-sheets/ ("higher thread counts mean higher prices, which consumers happily pay believing they are buying top quality sheets with thread counts of 750, 800, 1000, or even higher."); *see also Hawes v. Macy's Stores W., Inc.*, No. 1:17-CV-754, 2022 WL 194407, at *16 (S.D. Ohio Jan. 22, 2022) ("The Court finds there is more than enough evidence suggesting thread-count is a material factor in consumers' choice of bedsheets.").

29.     Industry participants, including Defendant, know that consumers will pay higher prices for bedding and linen products with a higher thread count because of the purported higher quality.  Therefore, industry participants increase product pricing as the thread count on the products increases.  This includes industry participants such as Defendant.

30.     The industry standard for measuring thread counts is based on the American Society for Testing and Materials' ("ASTM") Standard Test Method for Warp (End) Count and Filling (Pick) Count of Woven Fabric, Designation: D3775 (applicable to all woven fabrics).

31.     The ASTM D3775 standard requires that individual warp ends and filling picks are counted as "single units regardless of whether they are comprised of single or plied components" per D3775.

32.     The decades-long industry practice in the United States for thread counting has been to "count the number of threads in both the warp and filling directions" and to count plied yarns as "one yarn, regardless of whether the yarn was a single ply or multi-ply yarn.  (A multi-ply yarn is one yarn that has been created by twisting two or more yarns together.)"[4]

---

[4] Letter from James Kohm, Assoc. Dir. for Enf't Bureau of Consumer Prot., FTC, to E. Linwood Wright, III, Chairman of the Textile Bedding Comm. of the Nat'l Textile Ass'n (Aug. 2, 2005) https://www.ftc.gov/sites/default/files/documents/advisory_opinions/national-textile-association/natltextileassn.pdf

33.     However, some manufacturers, including Defendant, have departed from the industry standard for measuring thread count by "counting plied yarns individually."[5]  This results in a thread count inflation of double or triple (or higher) the thread count as would be measured using traditional industry standards.[6]

34.     To support its fraud, Defendant relies on a counting methodology that is inconsistent with industry standards, and which is designed to falsely inflate the true thread count of the sheets.  In support of this scheme, Defendant has ginned up false test results that purport to show passing test results.  However, much like an asterisk on a major league baseball record denoting steroid use, Defendant's own internal testing includes an asterisk and disclosure signifying departure from industry standard methodologies:

**Warp End Count and Filling Pick Count of Woven Fabric**
ASTM D3775-17e1

| Ends / Inch | 215 |
|---|---|
| Picks / Inch | 1248* |
| Total | 1463 |

*Note: 16 inserts / pick

Selected tests as requested by applicant **against specified requirement** / test request form / quotation.

35.     The inclusion of an asterisk in the picks/ inch field above denotes that 16 inserts were counted per pick.  That is not the industry standard method for thread counting, and if it were, then there would be no need to include the asterisk and corresponding explanation.  The test results further note that they were "requested by [Defendant] against specified requirement[s]," which again denotes departure from the industry standard methodology for thread counting.

36.     In a letter to the National Textiles Association ("NTA"), the Federal Trade Commission ("FTC") stated that this non-traditional practice of measuring thread count "created confusion in the marketplace and has caused consumers to compare thread counts that may have been calculated in two dramatically different ways."[7]  The FTC also stated that "consumers could

[5] *Id.*

[6] *Id.*

[7] *Id.*

be deceived or misled by the practice of stating an inflated thread count, achieved by multiplying the actual count by the number of plies within the yarn."[8]

37.     The practice of counting the plies that make up each thread was also condemned by the American Textile Manufacturer's Institute ("ATMI").  In a letter sent to the FTC on January 31, 2002, Exhibit B, ATMI addressed marketing of bed sheets and pillowcases to consumers with claims of extremely high yarn or thread count claims, stating that:

> Labeling these products based on a count that includes each ply in plied yarns deceives the customer into believing that bedding products with higher counts are better, when, in fact, they might be inferior because of the method used to determine the count.
>
> ...
>
> In many cases, these extremely high counts are achieved by counting yarns within a ply as individual yarns, thus dramatically increasing the number of yarns in a square inch of fabric. A plied yarn is one in which two or more yarns are twisted together to form a single strand.
>
> ATMI believes this method of labeling products based on counting each individual yarn in plies to be a deceptive practice, which misleads the American public into making purchasing decisions to purchase items, based on false and misleading information.
>
> ASTM method D 3775-96 (Standard Test Method for Fabric Count of Woven Fabric) [a prior version of D3775-12] the long-accepted industry standard for determining count.  This method has been in use in this country for many years and serves as the industry's standard way to report the count of many woven textile fabrics, including sheeting.  It is based on the number of yarns in the warp direction and filling direction, regardless of ply, and has become an important parameter used by consumers to judge the quality of sheeting products, since the higher the count, the more luxurious the product.
>
> ATMI believes that any information provided to the consumer should be true and correct so as not to be deceptive or misleading.  We believe that plied yarns are properly counted as only one yarn.  For example, a fabric containing 250 individual four ply yarns in a square inch would be described as a "250 thread count fabric, even though each thread or yarn contained four plies twisted together."  **It would be false and misleading to describe this as a 1000 thread count product**.

---

[8] *Id.*

38.     Despite knowing the long-standing industry standards, Defendant deviated from the traditional thread counting standards to mislead consumers.  Defendant's Products were manufactured, marketed, advertised, sold, and/or distributed with inflated thread counts.

39.     When Defendant's Products were measured according to industry standards by an independent lab, the thread counts were significantly less than claimed by Defendant.[9]

40.     Defendant knows that its method of calculating thread count is misleading and not based on industry standards for determining thread count.  By representing that its Products had higher thread counts than the products really have, Defendant unjustly profited from the sale of such bedding and linen products to consumers.  Because of Defendant's inflated thread counts, Plaintiffs and other Class Members purchased products they would not have otherwise purchased, or that they would have paid a lower price for had they known the actual thread counts at the time of purchase.

41.     As outlined above, the thread count representations are material to consumers, as evidenced further by their prominence on the front packaging of the Products at issue.

## CLASS ALLEGATIONS

42.     Plaintiffs seek to represent the following classes:

(a)     All people in the United States who purchased any Beautyrest product that represents the product as having a thread count of 1000 during the applicable statute of limitations.

(b)     All people in the United States who purchased any Madison Park product that represents the product as having a thread count of 1500 during the applicable statute of limitations.

(c)     All people in California who purchased any Beautyrest product that represents the product as having a thread count of 1000 during the applicable statute of limitations.

---

[9] *See* Exhibits A-B.

(d)   All people in California who purchased any Madison Park product that represents the product as having a thread count of 1500 during the applicable statute of limitations.

(e)   All people in New York who purchased any Beautyrest product that represents the product as having a thread count of 1000 during the applicable statute of limitations.

(f)   All people in New York who purchased any Madison Park product that represents the product as having a thread count of 1500 during the applicable statute of limitations.

43.   The aforementioned class definitions are placeholders and subject to change. Subject to additional information obtained through further investigation and discovery, the foregoing class definitions may be expanded or narrowed by amended complaint or at class certification, including through the use of multi-state subclasses to account for material differences in state law, if any.

44.   Specifically excluded from proposed classes are Defendant, Defendant's officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint ventures, or entities controlled by Defendant, and its heirs, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or Defendant's officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

45.   **Numerosity.**  Class members are geographically dispersed throughout the United States and are so numerous that individual joinder is impracticable.  Plaintiffs reasonably estimate that there are hundreds of thousands of class members.

46.   **Existence and predominance of common questions of law and fact.**  Common questions of law and fact exist as to all class members and predominate over any questions affecting only individual class members. These common legal and factual questions include, but are not limited to, the following:

(a)     Whether Defendant made false and/or misleading statements to the consuming public concerning the thread count of its Products;

(b)     Whether Defendant's labeling and packaging for the Products at issue are misleading and/or deceptive;

(c)     Whether Defendant engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising and sale of the Products at issue;

(d)     Whether Defendant represented to consumers that the its Products have characteristics or qualities they do not have;

(e)     Whether Defendant advertised the Products at issue with the intent to sell it not as advertised;

(f)     Whether Defendant made and breached express and/or implied warranties concerning the Products at issue;

(g)     Whether Defendant's conduct injured Plaintiffs and class members; and

(h)     Whether Plaintiffs and class members are entitled to damages or other relief.

47.     **Typicality.**  Plaintiffs' claims are typical of the claims of the class members in that, among other things, they were deceived (or reasonably likely to be deceived) in the same way by Defendant's false and misleading claims about the purported thread count of the Products at issue. All class members were comparably injured by Defendant's wrongful conduct as set forth herein. Further, there are no defenses available to Defendant that are unique to Plaintiffs.

48.     **Adequacy of Representation.**  Plaintiffs will fairly and adequately protect the interests of the proposed class members.  Plaintiffs retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiffs intend to vigorously prosecute this action on behalf of class members.  Furthermore, Plaintiffs have no interests that are antagonistic to those of class members.

49.     **Superiority.**  A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class and Subclass Members are relatively small compared to the burden and expense of individual litigation of their claims against Defendant.  It would, thus, be virtually impossible for

Class or Subclass Members to obtain effective redress on an individual basis for the wrongs committed against them.  Even if Class or Subclass Members could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  It would also increase the delay and expense to all parties and the court system from the issues raised by this action.  The class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

50.     In the alternative, the Class and Subclasses may also be certified because:

(a)     the prosecution of separate actions by individual Class and Subclass Members would create a risk of inconsistent or varying adjudications with respect to individual Class or Subclass Members that would establish incompatible standards of conduct for Defendant;

(b)     the prosecution of separate actions by individual Class and Subclass Members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class and Subclass Members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or Defendant has acted or refused to act on grounds generally applicable to the Class and to the Subclass as a whole, thereby making appropriate final declaratory and/or injunctive relief with respect to the Members of the Class and to the Members of the Subclass as a whole.

## COUNT I
### Breach Of Express Warranty

51.     Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

52.     Plaintiffs bring this Count individually and on behalf of the members of the proposed classes against Defendant.

53.     Each Plaintiff asserts this claim under the laws of their respective state.

54.     As the designer, manufacturer, marketer, distributor, and/or seller of the Products, Defendant issued an express warranty concerning the thread count of the Products.

55.     Plaintiffs and class members reasonably relied on Defendant's misrepresentations, descriptions and specifications regarding the Products' thread counts.

56.     Defendant's representations were part of the description of the goods and the bargain upon which the goods were offered for sale and purchased by Plaintiffs and Members of the classes.

57.     The Products do not conform to Defendant's representations about the thread count because they have a lower thread count than advertised.

58.     As a direct and proximate result of Defendant's breach, Plaintiffs and class members were injured because they: (1) paid money for the Products that were not what Defendant represented; (2) were deprived of the benefit of the bargain because the Products they purchased were different than what Defendant advertised; and (3) were deprived of the benefit of the bargain because the Products they purchased had less value than if Defendant's representations about the characteristics of the Products were truthful.  Had Defendant not breached the express warranty by making the false representations alleged herein, Plaintiffs and class members would not have purchased the Products or would not have paid as much as they did for them.

59.     Defendant was provided with pre-suit notice of the claims at issue here.

## COUNT II
### Breach of Implied Warranty of Merchantability

60.     Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

61.     Plaintiffs bring this Count individually and on behalf of the members of the proposed classes against Defendant.

62.     Each Plaintiff asserts this claim under the laws of their respective state.

63.     Defendant, as the designer, manufacturer, marketer, distributor, and/or seller, has made an implied promise on the label of the Beautyrest Products that they have a thread count of

1    1000, and has made an implied promise on the label of the Madison Park Products that they would

2    have a thread count of 1500.

3         64.    Defendant made implied representations about its Products' thread counts that were

4    false and misleading, as outlined above. Defendant's Products had an entirely different thread

5    count based on industry standards.

6         65.    Defendant breached its implied warranties due to the false thread count labeling at

7    issue in this case, Plaintiff and the proposed classes did not receive the goods as impliedly

8    warranted by Defendant.

9         66.    Had Defendant not breached its implied warranty by making the false

10   representations alleged herein, Plaintiffs and class members would not have purchased the Products

11   or would not have paid as much as they did for them. As such, Plaintiffs and the proposed classes

12   have sustained damages as a proximate result of the foregoing breach of implied warranty in an

13   amount to be determined at trial.

14        67.    Defendant was provided with pre-suit notice of the claims at issue here.

15                                      **COUNT III**

16                                  **Unjust Enrichment**

17        68.    Plaintiffs incorporate by reference the allegations contained in all proceeding

     paragraphs of this complaint.

18
          69.    Plaintiffs bring this Count individually and on behalf of the members of the
19
     proposed classes against Defendant.
20
          70.    Each Plaintiff asserts this claim under the laws of their respective state.
21
          71.    Plaintiffs and class members conferred benefits on Defendant by purchasing the
22
     Products.
23
          72.    Defendant has knowledge of such benefits.
24
          73.    Defendant has been unjustly enriched in retaining the revenues derived from the
25
     purchases of the Products.  Retention of monies under these circumstances is unjust and inequitable
26
     because Defendant misrepresented that the Products contained a thread count of 1000 or 1500 and
27
     charged a price premium based on those representations.
28

74.     Putative class members have suffered an injury in fact and have lost money as a result of Defendant's unjust conduct.  Putative class members lack and adequate remedy at law with respect to this claim and are entitled to non-restitutionary disgorgement of the financial profits that Defendant obtained as a result of its unjust conduct.

**COUNT IV**
**Fraud**

75.     Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

76.     Plaintiffs bring this Count individually and on behalf of the members of the proposed classes against Defendant.

77.     Each Plaintiff asserts this claim under the laws of their respective state.

78.     As discussed above, Defendant misrepresented the thread count of the Products at issue.

79.     The false and misleading representations were made with knowledge of their falsehood.

80.     The false and misleading representations were made by Defendant, upon which Plaintiffs and members of the classes reasonably and justifiably relied and were intended to induce and actually induced Plaintiffs and Class members to purchase the Products.

81.     The fraudulent actions of Defendant caused damage to Plaintiffs and members of the classes, who are entitled to damages and punitive damages as a result.

**COUNT V**
**Violation of California's Consumers Legal Remedies Act**
**California Civil Code § 1750,** *et seq*.

82.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

83.     Plaintiffs bring this Count individually and on behalf of the members of the proposed classes against Defendant.

84.     This cause of action is brought pursuant to California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750-1785 (the "CLRA").

85. Plaintiffs and class members are "consumers," as the term is defined by California Civil Code § 1761(d), because they bought the Products at issue for personal, family, or household purposes.

86. Defendant is a "person" within the meaning of Cal. Civ. Code § 1761(c). Defendant's Products are "goods" within the meaning of Cal. Civ. Code § 1761(a).

87. The parties have engaged in "transactions," as that term is defined by California Civil Code § 1761(e).

88. The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Defendant in transactions intended to result in, and which did result in, the sale of goods to consumers.

89. Defendant has violated the CLRA by making false statements about the thread count of the Products at issue.

90. As a result of engaging in such conduct, Defendant has violated California Civil Code § 1770(a)(5), (a)(7), and (a)(9).

91. As a direct and proximate result of Defendant's unfair and deceptive business practices, as alleged above and herein, Plaintiffs and class members have suffered injury.

92. Defendant's unfair and deceptive business practices, as alleged above and herein, were willful, wanton, and fraudulent.

93. Defendant's officers, directors, and/or managing agents authorized the use of the false and misleading statements regarding the Products' thread counts, as alleged above and herein.

94. Plaintiffs and class members suffered harm as a result of these violations of the CLRA because they have paid money for the Products that they otherwise would not have incurred or paid.

95. Plaintiffs and class members suffered an injury in fact resulting in the loss of money and/or property as a proximate result of the violations of law and wrongful conduct of Defendant alleged herein, and they lack an adequate remedy at law to address the unfair conduct at issue here. Legal remedies available to Plaintiffs and class members are inadequate because they are not

equally prompt and certain and in other ways efficient as equitable relief.  Damages are not equally certain as restitution because the standard that governs restitution is different than the standard that governs damages.  Hence, the Court may award restitution even if it determines that Plaintiffs fail to sufficiently adduce evidence to support an award of damages.  Damages and restitution are not the same amount.  Unlike damages, restitution is not limited to the amount of money defendant wrongfully acquired plus the legal rate of interest.  Equitable relief, including restitution, entitles the plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize.  Legal claims for damages are not equally certain as restitution because claims under the CLRA entail few elements.  In short, significant differences in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at law.

96.     Plaintiffs seek all available relief under the CLRA, except damages.  Plaintiffs reserve the right to amend to seek damages at a later date.

## COUNT VI
### Violation of California's False Advertising Law ("FAL"), Business & Professions Code § 17500 *et seq.*

97.     Plaintiffs incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

98.     Plaintiffs bring this Count individually and on behalf of the members of the proposed classes against Defendant.

99.     Defendant violated Business & Professions Code § 17500 by publicly disseminating false, misleading, and deceptive advertisements regarding the Products by falsely inflating their thread count.

100.    Defendant's false and misleading advertisements were disseminated to increase the sales of the Products at issue.  Defendant knew or should have known that its advertisements for the Products were false, misleading, and deceptive.

101.   Plaintiffs and class members suffered harm as a result of these violations of the FAL because they have incurred charges and/or paid monies for Products that they otherwise would not have incurred or paid.

102.   Plaintiffs and class members suffered an injury in fact resulting in the loss of money and/or property as a proximate result of the violations of law and wrongful conduct of Defendant alleged herein, and they lack an adequate remedy at law to address the unfair conduct at issue here. Legal remedies available to Plaintiffs and class members are inadequate because they are not equally prompt and certain and in other ways efficient as equitable relief.  Damages are not equally certain as restitution because the standard that governs restitution is different than the standard that governs damages.  Hence, the Court may award restitution even if it determines that Plaintiffs fail to sufficiently adduce evidence to support an award of damages.  Damages and restitution are not the same amount.  Unlike damages, restitution is not limited to the amount of money defendant wrongfully acquired plus the legal rate of interest.  Equitable relief, including restitution, entitles the plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize.  Legal claims for damages are not equally certain as restitution because claims under the FAL entail few elements.  In short, significant differences in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at law.

103.   Plaintiffs seek all available relief under the FAL.

<u>**COUNT VII**</u>
**Violation of California's Unfair Competition Law ("UCL"),**
**Business & Professions Code §§ 17200 *et seq.***

104.   Plaintiffs incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

105.   Plaintiffs bring this Count individually and on behalf of the members of the proposed classes against Defendant.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

106.    By committing the acts and practices alleged herein, Defendant has violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17210 by engaging in unlawful, fraudulent, and unfair conduct.

107.    Defendant has violated the UCL's proscription against engaging in unlawful conduct as a result of its violations of the CLRA, Cal. Civ. Code § 1770(a)(5), (a)(7), and (a)(9) as alleged above, as well as its violations of the other laws referenced herein. Defendant has also violated the unlawful prong under FCTA § 5(A) because its business practices are "likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition."  15 U.S.C. § 45(n).

108.    Defendant's business practices are also unlawful pursuant to the FTCA by way of the Textile Fiber Products Identification Act, 15 U.S.C. §§ 70a(a), 70a(b), and/or § 70a(c).  These sections make it unlawful, under 15 U.S.C. §§ 41 et seq., to sell, transport, deliver, or advertise "any textile fiber product . . . which is misbranded or deceptively advertised."

109.    Defendant's business practices are fraudulent because they include affirmative representations and omissions and are likely to mislead reasonable consumers under the circumstances.

110.    Plaintiffs and the members of the Class have suffered an injury in fact resulting in the loss of money and/or property as a proximate result of the violations of law and wrongful conduct of Defendant alleged herein, and they lack an adequate remedy at law to address the unfair conduct at issue here.  Legal remedies available to Plaintiffs and class members are inadequate because they are not equally prompt and certain and in other ways efficient as equitable relief. Damages are not equally certain as restitution because the standard that governs restitution is different than the standard that governs damages.  Hence, the Court may award restitution even if it determines that Plaintiffs fail to sufficiently adduce evidence to support an award of damages. Damages and restitution are not the same amount.  Unlike damages, restitution is not limited to the amount of money defendant wrongfully acquired plus the legal rate of interest.  Equitable relief, including restitution, entitles the plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize.

Legal claims for damages are not equally certain as restitution because claims under the UCL entail few elements.  In short, significant differences in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at law.

111.    Plaintiffs seek all available relief under the UCL.

<u>**COUNT VIII**</u>
**Violation of New York General Business Laws §§ 349 & 350**

112.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

113.    Plaintiff Clark brings this Count individually and on behalf of the members of the New York subclasses against Defendant.

114.    New York General Business Law §349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service[.]"

115.    Similarly, New York General Business Law §350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service[.]"

116.    Defendant intended that Plaintiffs and class members would rely upon its deceptive conduct and false advertising of thread count, and a reasonable person would in fact be misled by this deceptive conduct.

117.    As a result of the Defendant's use or employment of unfair or deceptive acts or business practices and false advertising, Plaintiff Clark and members of the New York subclasses have sustained damages in an amount to be proven at trial.

118.    In addition, Defendant's conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

119.    Plaintiff Clark seeks all available relief under GBL §§ 349 and 350, including but not limited to statutory damages.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a)    For an order certifying the Class and the Subclasses under Rule 23 of the Federal Rules of Civil Procedure, naming Plaintiffs as the representative of the Class, Plaintiff Staples and Scott representatives of the California Subclass, Plaintiff Clark representative of the New York Subclass, and Plaintiffs' attorneys as Class Counsel to represent the Class and Subclass members;

(b)    For an order declaring the Defendant's conduct violates the statutes referenced herein;

(c)    For an order finding in favor of Plaintiffs, the Class, and the Subclasses on all counts asserted herein;

(d)    For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

(e)    For prejudgment interest in all amounts awarded;

(f)    For an order of restitution and all other forms of equitable monetary relief, including non-restitutionary disgorgement;

(g)    For an order awarding Plaintiffs and the Class and Subclasses their reasonable attorney's fees and expenses and costs of suit.

## JURY TRIAL DEMANDED

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable of right.

Dated:  January 4, 2024                      **BURSOR & FISHER, P.A**.

                                    By:    */s/ Joel D. Smith*
                                          Joel D. Smith

                                    Joel D. Smith (State Bar No. 244902)
                                    Brittany S. Scott (State Bar No. 327132)
                                    1990 North California Blvd., Suite 940
                                    Walnut Creek, CA 94596
                                    Telephone: (925) 300-4455
                                    Facsimile:  (925) 407-2700
                                    E-mail: jsmith@bursor.com
                                              bscott@bursor.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TREEHOUSE LAW, LLP**
Benjamin Heikali (State Bar No. 307466)
2121 Avenue of the Stars, Suite 2580
Los Angeles, CA 90067
Telephone: (310) 751-5928
E-mail: bheikali@treehouselaw.com

*Attorneys for Plaintiffs*

1

**CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)**

2    I, Joel D. Smith, declare as follows:

3    1.   I am an attorney at law licensed to practice in the State of California, and I am a

4 member of the bar of this Court.  I am a Partner at Bursor & Fisher, P.A., counsel of record for

5 Plaintiffs in this action.  I have personal knowledge of the facts set forth in this declaration and, if

6 called as a witness, I could and would competently testify thereto under oath.

7    2.   The Complaint filed in this action is filed in the proper place for trial under Civil

8 Code Section 1780(d) because Defendant is headquartered in this District and Plaintiff Staples

9 alleges that the transaction at issue occurred in this District.

10    I declare under the penalty of perjury under the laws of the State of California and the United

11 States that the foregoing is true and correct and that this declaration was executed at Danielson,

12 Connecticut, on January 4, 2024.

13

14            */s/ Joel D. Smith*
                Joel D. Smith

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT A**



**Quality Assurance & Compliance Testing**
**Utilizing Textile & Related Technologies**

19 West 36th Street, 10th Floor
New York, NY 10018
Tel: 212 947 8391   Fax: 212 947 8719

www.vartest.com

# 𝕴𝕾𝕺/𝕴𝕰𝕮 17025 𝕿𝖍𝖎𝖗𝖉 𝕻𝖆𝖗𝖙𝖞 𝕿𝖊𝖘𝖙 𝕽𝖊𝖕𝖔𝖗𝖙

**DATE:**     March 15, 2023

**FILE:** BURFIS.A030923B

**CLIENT:**   Bursor & Fisher, P.A.
1990 N. California Blvd., Suite 940
Walnut Creek, CA 94596

**ATTN:** Alex Riggsby

**SAMPLE IDENTIFIED BY CLIENT AS:**

Sheet Set Submitted
Manufacturer: Beautyrest
Style: Cotton Blend Cooling 4pc Sheet Set, Full
Lot #: BR20-1871, Ref: 1000 tc
Color Gray

**TEST PROCEDURES:**                    **TEST RESULTS:**

**FABRIC COUNT**
**(ASTM D3775):**                       148 ends/" x 68 picks/" average

**COMMENT:**                            Test performed on pillowcase.
Filling yarn is a continuous filament.
Filling yarn is not clearly separable.

**THREAD COUNT**
**(ASTM D3775):**                       216

Signed For The Company By

Joseph Lin
Laboratory Manager

Stacy Sadowy
Quality Assurance Manager

CS/03




The findings and results in this test report apply only to the specific sample(s) submitted to us by the client for testing.
Unless otherwise specified, all compliance statements are simple acceptance.
Terms and Conditions: http://vartest.com/resources/terms-and-conditions/

## WARP AND WEFT COUNTS OF SHEET SAMPLE 14

The warp (end) and weft (pick or filling) counts (also called "fabric count") of Sheet Sample 14 were determined according to the ASTM D3775-17 Standard Test Method for End (Warp) and Pick (Filling) Count of Woven Fabrics [1]. Sheet Sample 14 is "Madison Park® 1500 Thread Count Cotton Rich Sheet Set", which is shown in Figure 1.



*Figure 1 Sheet Sample 14*

The sheet sample was conditioned at 72°F and 65% RH for more than 24 hours according to the ASTM D1776 Standard Practice for Conditioning and Testing Textiles. Five specimens, approximately 3.5"x3.5", were cut diagonally from the sheet sample as shown in Figure 2. The specimen locations were selected according to the ASTM standard.



*Figure 2 Locations of the specimens on the sheet sample*

Then, each specimen was raveled to 1"x1" (2.5 cm x 2.5 cm) as shown in Figure 3.



*Figure 3 A raveled specimen*

Then, using Meiji Techno EMZ-13TR microscope, the number of yarns in the warp and weft directions were counted and the average is reported. The average yarn count was rounded to the nearest whole yarn. The results are shown in Table 1.

*Table 1 Warp, weft, and fabric counts*

|  | Warp count/inch | Weft count/inch | Fabric count/square inch |
|---|---|---|---|
| Specimen 1 | 78 | 213 | 291 |
| Specimen 2 | 78 | 218 | 296 |
| Specimen 3 | 77 | 215 | 292 |
| Specimen 4 | 78 | 218 | 296 |
| Specimen 5 | 78 | 215 | 293 |
| Average | 79 | 216 | 295 |

No plied yarn or cord was observed in the warp or weft direction.

**Conclusion**:

The average number of warps and wefts per inch of Sheet Sample 13, to a reasonable degree of scientific certainty, is 79 x 216, respectively (fabric thread count of 295 per square inch).

Prepared by:

Dr. Sabit Adanur, Professor

11 December 2022

<u>References</u>

 [1] *American Society for Testing and Materials, www.astm.org.*

**EXHIBIT B**





FEDERAL TRADE COMMISSION

**JAN 3 1 2002**

DIVISION ENFORCEMENT

# A MERICAN T EXTILE
# M ANUFACTURERS I NSTITUTE

January 31, 2002

Mr. Steve Ecklund
Federal Trade Commission
Division of Enforcement
Washington, DC  20580

Re:    Request for FTC Staff
       <u>Opinion on Yarn Count</u>

Dear Mr. Ecklund:

It has come to our attention again that some companies are marketing bed sheets and pillowcases to U.S. consumers where extremely high yarn or thread counts are claimed – some as high as 1000 count.  We believe these products are mislabeled, creating deceptive information for the consumer.

Labeling these products based on a count that includes each ply in plied yarns deceives the customer into believing that bedding products with higher counts are better when, in fact, they might be inferior because of the method used to determine the count.  We wrote to the Commission regarding this same issue on February 24, 1997 (copy enclosed) and provided a fabric sample and independent lab report verifying our position.

In many cases, these extremely high counts are achieved by counting yarns within a ply as individual yarns, thus dramatically increasing the number of yarns in a square inch of fabric.  A plied yarn is one in which two or more yarns are twisted together to form a single strand.

ATMI believes this method of labeling products based on counting each individual yarn in plies to be a deceptive practice, which misleads the American





1130 Connecticut Ave., NW • Suite 1200 • Washington, DC  20036-3954
202-862-0500 • fax:  202-862-0570 • http://www.atmi.org
fax on demand:  202-862-0572

public into making decisions to purchase items, based on false and misleading information.

ASTM method D 3775-96 (Standard Test Method for Fabric Count of Woven Fabric) is the long-accepted industry standard for determining count. This method has been in use in this country for many years and serves as the industry's standard way to report the count of many woven textile fabrics, including sheeting. It is based on the number of yarns in the warp direction and filling direction, regardless of ply, and has become an important parameter used by consumers to judge the quality of sheeting products, since the higher the count, the more luxurious the product.

ATMI believes that any information provided to the consumer should be true and correct so as not to be deceptive or mis-leading. We believe that plied yarns are properly counted as only one yarn. For example, a fabric containing 250 individual four ply yarns in a square inch would be described as a "250 thread count fabric, even though each thread or yarn contained four plies twisted together." It would be false and mis-leading to describe this as a 1000 thread count product.

ATMI requests a staff opinion from the Federal Trade Commission on this issue. We believe that manufacturers, importers and retailers of bed sheets should rely on the ASTM D3775-96 standard test method to determine count.

Sincerely,

Carlos Moore
Executive Vice President

Enclosure

**EXHIBIT C**



**Vartest**
Laboratories

**Quality Assurance & Compliance Testing**
**Utilizing Textile & Related Technologies**

19 West 36th Street, 10th Floor
New York, NY 10018
Tel: 212 947 8391   Fax: 212 947 8719

www.vartest.com

# ISO/IEC 17025 Third Party Test Report

**DATE:** March 15, 2023

**FILE:** BURFIS.A030923A

**CLIENT:** Bursor & Fisher, P.A.
1990 N. California Blvd., Suite 940
Walnut Creek, CA 94596

**ATTN:** Alex Riggsby

**SAMPLE IDENTIFIED BY CLIENT AS:**

Sheet Set Submitted
Manufacturer: Aireolux
Style: Sateen Cotton Sheet Set
Lot #: 903062 034193, Ref: 600 tc
Color Light Gray

**TEST PROCEDURES:**

**TEST RESULTS:**

**FABRIC COUNT**
**(ASTM D3775):**

232 ends/" x 557 picks/" average

**COMMENT:**

Test performed on pillowcase.
6 filling yarns weave as 1 in the context
of an 8 end and pick pattern repeat.

**THREAD COUNT**
**(ASTM D3775):**

789

Signed For The Company By

Joseph Lin
Laboratory Manager

Stacy Sadowy
Quality Assurance Manager

CS/03



The findings and results in this test report apply only to the specific sample(s) submitted to us by the client for testing.
Unless otherwise specified, all compliance statements are simple acceptance.
Terms and Conditions: http://vartest.com/resources/terms-and-conditions/